IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINIC REALE, | ) CIVIL ACTION NO.: 2:18-cv-00229 |
|           Plaintiff, | ) |
| vs. | ) |
| CITY OF PITTSBURGH,<br>RONALD HOUGH, as an individual,<br>RAY RIPPOLE, as an individual, and<br>JOHN and/or JANE DOE(S), as an<br>individual, | ) |
|           Defendants. | ) |

**BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTS 1 AND 2
OF THE AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**

### I. FACTS OF THE CASE

Plaintiff, Dominic Reale, instituted this action against Defendant, Ronald Hough, by complaint filed on February 23, 2018.  On May 29, 2018, Hough filed a motion to dismiss.  On July 3, 2018, Plaintiff responded by filing a Motion to Amend the Complaint, which the Court granted on July 5, 2018.  Plaintiff then filed his amended complaint on July 10, 2018.  The Amended Complaint also joins the City of Pittsburgh, Officer Ray Rippole, a City of Pittsburgh police lieutenant and several "Doe" defendants.

The Complaint asserts four counts:  (1) a section 1983 claim for deprivation of the Plaintiff's civil rights against Hough and the City of Pittsburgh, (2) a section 1983 claim of

conspiracy to violate Plaintiff's civil rights against Hough and new defendants, Ray Rippole and John and Jane Doe; (3) a section 1983 claim for deprivation of Plaintiff's civil rights against the City of Pittsburgh; and (4) a common law claim for assault and battery against Hough.

Defendant Hough now files his Motion to Dismiss Counts I and II of the Amended Complaint (federal causes of action against Hough).  Despite embellished and new allegations, the amended complaint suffers from deficiencies similar to those in the original complaint.

**Count 1:  42 U.S.C. § 1983 for Use of Excessive Force**

This case stems from an incident that occurred on October 30, 2017, during which Hough allegedly used his taser on Plaintiff and then pulled the prongs of the taser out of Plaintiff's chest.  Amended Complaint, ¶ 49.  More specifically, the Amended Complaint alleges:

    a.    The Plaintiff and Hough were both present in the Villa Reale restaurant located in Downtown Pittsburgh in the evening of October 30, 2017.  Amended Complaint ¶ 10.

    b.    Members of the City of Pittsburgh police force, including Hough, frequently eat at the Villa Reale.  The restaurant was within Hough's patrol zone.  Amended Complaint, ¶ 13.

    c.    On October 30, 2017, Hough was on-duty as a City of Pittsburgh police officers, was dressed in full uniform, and was carrying a government-issued mace and taser.  Amended Complaint, ¶ 14.

    d.    On October 30, 2017, Plaintiff and Hough ate dinner together during which time they engaged in friendly conversation.  Amended Complaint, ¶ 15.

    e.    At some point, Hough allegedly began to act erratically by brandishing his mace and taser and pointing them at Plaintiff.  Amended Complaint, ¶ 16.

    f.    Plaintiff claims that he and Hough got up from the table and Hough began talking about difficulties he was having with his eyes.  Amended Complaint, ¶¶ 17, 18.

g.  Hough then allegedly began to "stalk" plaintiff by following him around the restaurant counter "in a threatening and menacing way." According to the Plaintiff, he advised Hough that Hough's conduct was inappropriate. Amended Complaint, ¶ 19. At some point, Hough stopped his pursuit of Plaintiff and Plaintiff began a conversation with a woman seated at the restaurant counter. Amended Complaint, ¶ 20.

h.  Hough then tased Plaintiff with his taser without warning or cause. Plaintiff contends that Hough's actions violated numerous rules and regulations of the City of Pittsburgh Police Department and commonly accepted police procedures. Amended Complaint ¶ 21

i.  After tasing the Plaintiff, Hough "forcibly removed the taser prongs from the Plaintiff's chest without the benefit of properly trained medical personnel." Amended Complaint, ¶ 23.

j.  The predicate facts constitute the basis for Plaintiff's claim that his right to be free from assault and excessive force under the Fourth Amendment to the United States Constitution was violated. Amended Complaint, ¶¶ 47, 49.

The amended complaint modified the allegations of Count 1 of the original complaint to make clear that Officer Hough was on duty at the time of the incident and used his government-issued taser on Plaintiff. Amended Complaint, ¶¶ 13--16, 21, 23. These allegations are not truly new allegations, and for the same reasons set forth in Hough's original Motion to Dismiss Count 1 of the Complaint, the allegations are insufficient to make out a section 1983 claim because there is no factual allegation that Hough was acting under color of state law and, in fact, the allegations indicate that he was acting in a personal capacity contrary to established City of Pittsburgh rules and regulations governing his conduct. For those reasons, as discussed below, the Court must dismiss Count I of the Amended Complaint.

**Count 2: 42 U.S.C. § 1983 For Conspiracy to Violate Plaintiff's Constitutional Rights against Excessive Force**

2. The Amended Complaint raises a new claim against Hough and other named and unnamed defendants for conspiracy to violate Plaintiff's Constitutional rights against excessive force. The operative facts concerning this newly-alleged claim are as follows:

    a. On two occasions after the October 30 incident, Hough went to the restaurant to urge Plaintiff to forget the incident, destroy evidence of the incident and to refrain reporting Hough's action to the proper authorities in attempt to save Hough's job. Amended Complaint ¶ 24.

    b. On two occasions after the October 30 incident, Hough sent text messages to Plaintiff requesting to discuss the incident with him and to inquire whether Plaintiff had destroyed video of the incident. Amended Complaint ¶ 25.

    c. On one occasion, Hough contacted Plaintiff to attempt to have him drop the incident in order to salvage his [Hough's] job. Amended Complaint, ¶ 26

    d. Various current and former members of the City of Pittsburgh Police Department urged Plaintiff to refrain from taking action against Hough for his conduct. Amended Complaint, ¶ 27.

    e. Hough was responsible for soliciting the assistance of some or all of the officers attempting to convince Plaintiff to drop any claims he may have against Hough. Amended Complaint, ¶ 29.

    f. Defendant Rippole pressured Plaintiff to drop the claims against Hough by making statements such as the following:

        i. "Do you want to take one for the team"?

        ii. "Ron has a family."

        iii. "Are you really going to tell on him"?

        iv. "Are you really going to ruin his life"?

    Amended Complaint, ¶¶ 30, 31.

    g. Hough, Rippole and the Doe defendants conspired to "ratify the unlawful and unconstitutional acts committed by Hough.

> Amended Complaint, ¶ 35  The individual defendants developed an agreed-upon plan to cover up Defendant Hough's unlawful actions or to devise a falsified version of the events to exculpate them and deny Plaintiff his right to be free from unreasonable and unjustified use of force.  Amended Complaint, ¶ 36.

## II.     ARGUMENT

### A.  Standard of Review

Although detailed pleading is not required, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) *citing Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Plaintiff is required to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.

> Under the pleading regime established by [*Bell Atlantic Corp. v.*] *Twombly* [, 550 U.S. 544 (2007)] and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First it must "tak[e] note of the elements [the] plaintiff must plead to state a claim."  Second, it should identify allegations that "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Connelly*, 809 F.3d at 787 (citations and footnotes omitted).

### B.     Plaintiff Cannot Claim that Hough Acted Under Color of State Law.

A section 1983 claim requires the plaintiff to allege a violation of a right under the Constitution or laws of the United States, and that the violation was committed by a person

acting under color of state law. *Barna v. City of Perth Amboy*, 42 F.3d 809, 815 (3d Cir. 1994). "Under color of state law" requires the actor to exercise power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id*. At 816. But more importantly, "under color of state law" means under the pretense of law. *Id*.

> [A] police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law. *See Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (holding that alleged assault by on-duty police chief at police station did not occur under color of state law because the altercation with the plaintiff, defendant's sister-in-law, arose out of a personal dispute and defendant neither arrested nor threatened to arrest the plaintiff); *see also D.T. v. Independent School Dist. No. 16,* 894 F.2d 1176 (10th Cir. [1990]) (finding sexual molestation of students by public school teacher/coach that occurred on an excursion unconnected to school activities during school vacation period when teacher was not employed by the school district did not occur under color of state law); *cert. denied*, 498 U.S. 879, 111 S.Ct. 213, 112 L.E. 2d 172 (1990). ***While a police-officer's use of a state-issue weapon in the pursuit of private activities will have "furthered" the § 1983 violation in a literal sense, courts generally require additional indicia of state authority to conclude that the officer acted under color of state law***. *Compare Bonsignore v. City of New York*, 683 F.2d 635 (2d Cir. 1982) (holding that officer who used police handgun to shoot wife and then commit suicide did not act under color of state law even though he was required to carry the gun at all times); *with Stengel v. Belcher*, 522 F.2d 806, 809 (5th Cir. 1991) (finding requirement under color of state law met where off-duty deputy sheriff assaulted wife's alleged lover in a private vendetta, but identified self as police officer, used service revolver, and intimated that he could use police authority to get away with paramour's murder), *cert. denied*, 504 U.S. 917, 112 S.Ct. 1960, 118 L.E.2d 562 (1992).

*Barna*, 42 F.3d at 816-17 (emphasis added).

In *Barna*, two off-duty police officers, one of whom was carrying his police-issued night stick, intervened in a disturbance at the home of one of the officer's sister. When the sister's husband told the officers to leave because they were outside of their jurisdiction, the officers

commenced beating the husband, and the related officer used his police-issue night stick to place the husband in a chokehold. Additional events took place that culminated in the husband's arrest and the sister's removal from the scene.

The Third Circuit, in an analysis that parsed the entire altercation into several distinct incidents to ascertain whether each incident established a cognizable section 1983 claim under color of state law, ruled that the husband's beating at the hands of the police officers, one of whom used his night stick, was not done under color of state law. The Court reasoned that although the officers' status as being off-duty was not dispositive of whether they were acting under color of state law, there was no evidence they were on official police business. *Id.* at 817. The officers went to the home of the Plaintiffs at the request of a relative; their department had not assigned them to go to the home. Also, the Court found that the officers had not identified themselves as police officers, did not indicate they were acting on official police business and did not attempt to arrest or otherwise invoke their police authority during the initial phase of the altercation. *Id.* at 818. The Court held that the altercation was wholly personal.

Other decision of district courts within the Third Circuit have arrived at the same conclusion. In *Washington-Pope v. City of Philadelphia*, 979 F. Supp. 2d 544 (E.D. Pa. 2013), while in a patrol car responding to a call, a City of Philadelphia police officer assaulted his partner by placing a loaded gun on his lap facing her. The police officer sued her partner and the city under section 1983. In an extensive survey of case law nationally on claims of excessive force against police officers, the district court found that the officer's action of pointing his gun at his partner did not constitute action taken under color of state law. The Court agreed with the defending officer that his action in pointing the gun at his partner had no connection to any official police power to enforce the law or any abuse of his power as a police officer. He

claimed that the pointing of the gun was precipitated by a verbal exchange between the officers unrelated to his performance of duties.  Because there was no evidence that the officer's actions were taken for the purpose of exercising his authority as a police officer, he was not acting under color of state law.  *Id*. at 568-69.  The Court found, "[t]hough his behavior is alarming and reprehensible, nothing suggests that he pretended to act with any official police authority when he raised his service weapon." *Id*. at 569.

In *Halwani v. Galli*, a police sergeant and the Plaintiff had forged a relationship prior to the incident in questions.  One day the sergeant, while dressed in full uniform, entered the Plaintiff's place of business in Darby, Pennsylvania, threatened the Plaintiff's life and threatened to bring charges of fraud and illegality against him.  The district court found the evidence insufficient to support liability under section 1983.  The Court found that the altercation was personal and based upon an argument between two friends.  2000 WL 968219 at *3 (E.D. Pa. 2000).  *Accord Stroby v. Egg Harbor Township*, 754 F. Supp. 2d 716 (D. N.J. 2010) (police officer, who had an affair with the plaintiff's wife, and who entered the plaintiff's home without permission while on duty and in uniform and began an altercation with him, was not acting under color of state law when their dispute was of a personal nature and did not involve the officer's role as a police officer).

Under the facts as alleged in the Complaint, Hough was in the Villa Reale restaurant to eat dinner.  Amended Complaint, ¶¶ 10, 13, 15.  At first he sat with Plaintiff to eat dinner and engage in conversation.  Amended Complaint, ¶ 15.  Subsequently, Hough engaged the Plaintiff in chase and ultimately used his taser against him.  Amended Complaint, ¶¶ 19, 21.  There is no allegation that Hough attempted to arrest Plaintiff, that he was present on official police business, or that he was attempting to assert police authority.  There is no allegation that Hough was called

to the Villa Reale to investigate or respond to a call. In fact, having taken steps to remove the prongs from plaintiff's chest, it appears that Hough had no intention of invoking his police powers in furtherance of an arrest. Amended Complaint ¶ 23. Rather, he was there, as he frequently was, off-duty, to eat. Amended Complaint, ¶ 13. Moreover, Plaintiff alleges that Hough's conduct violated established City of Pittsburgh police regulations. Amended Complaint, ¶ 21. There are no factual allegations that plausibly support a claim that Hough was acting under color of state law. What Plaintiff has alleged is a personal encounter between two individuals. Based on the allegations stated, Plaintiff cannot make out a colorable section 1983 on its face. Although Plaintiff has a remedy against Hough based on his common law claims for assault and battery, the allegations do not give rise to the federal cause of action.

      **C.**     **Plaintiff Has Not Alleged Facts That Support a Conspiracy to Violate His Constitutional Rights.**

Plaintiff contends that actions of Hough, and Defendants Rippole and Doe after the October 30 incident sought to "ratify" Hough's conduct and that they devised and developed a plan to cover up Hough's unlawful actions. In addressing claims of conspiracy to deprive an individual of constitutional rights, the courts within Pennsylvania have frequently looked to the First Circuit Court of Appeals decision in *Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir. 1980).[1] That case held

> While conspiracies may be actionable under section 1983, it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws. In order to state an adequate claim for relief under section 1983, "plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of a conspiracy is insufficient to

---

[1] *See e.g., Bush v. City of Philadelphia*, 1999 WL 554585 (E.D. Pa. 1999); *Holt Cargo Systems, Inc. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803 (E.D. Pa. 1998); *DeFeo v. Sill*, 810 F. Supp. 648 (E.D. Pa. 1993). *See also Townsend v. Holt*, 2015 WL 5695275 (M.D. Pa. 2015); *Epifan v. Roman*, 2014 WL 4828606 (D.N.J. 2014).

> establish a section 1983 claim. Conspiracy is merely the mechanism by which to obtain the necessary state action, or to impose liability on one defendant for the acts of the others performed in pursuance of the conspiracy.

628 F.2d at 742 (citations omitted). "While the existence of a conspiracy otherwise may supply the element of state action and expand the scope of liability through the concept of imputation, § 1983 does not provide a cause of action *per se* for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under § 1983." *Holt Cargo Systems*, 20 F. Supp. 2d at 843 (citations omitted) (emphasis in original).

Reduced to its essence, Plaintiff complains that Hough and Lieutenant Ray Rippole with other City of Pittsburgh officers attempted to "ratify" Defendant Hough's alleged misconduct by pressuring or cajoling Plaintiff to drop his claims against Hough. Amended Complaint, ¶¶ 24-32. He also claims that they conspired to falsify or cover up the events that took place on October 30 by exchanging unspecified memoranda. Amended Complaint ¶¶ 33-36. However, there are no facts to support these bald allegations of falsification or cover up. Several district court decisions are instructive here.

### 1. There are No Allegations that the Individual Defendants Entered into an Agreement to Deprive Plaintiff of any Constitutional Rights

The district court held that in order to allege a conspiracy, there must be allegations of a "meeting of the minds" or agreement to participate in the conspiracy. *Epifan* at *6. A plaintiff must show that the defendants acted in concert with the specific intent to violate his rights. *Holt*, at * 4. In *Epifan*, the police were investigating the plaintiff for pirating a movie at a local movie theater. When the police went to arrest the plaintiff, he began to run barefoot through the parking lot. One of the police officers attempted to chase plaintiff in his car. While the car was

moving, he hit the plaintiff with the car, causing him to fall under the car, at which point the car ran over the plaintiff's leg. After the incident took place, the Plaintiff could overhear the officer in the vehicle ask his colleagues if they saw the plaintiff run into him as if to change the narrative of the events. He then alleged a conspiracy to falsify the reports and cover up police misconduct.

The court found controlling the fact that there were no facts alleged that the police officers had entered into any conspiracy against the plaintiff *prior to* the incident in question. All of the statements had been made after the vehicle collision and could not be bootstrapped to make out a conspiracy before the incident had occurred. *Id*. *Accord Holt* (there are no facts alleged that the defendants knew of the alleged assault on the plaintiff prior to it occurring such that they could conspire to enable it to occur).

Here, too, there are simply no facts that the individual defendants in this case entered into a conspiracy to violate plaintiff's right to be free from excessive force prior to the tasing incident on October 30. There are no allegations that any of the individual defendants were aware in advance that the alleged incident was going to occur, or that they took any steps to facilitate its occurrence. The best the allegations can show is that they took some unspecified action to cover up what had already occurred or to persuade Plaintiff to drop his claims. However, a cover-up without more cannot be the basis for a conspiracy claim under section 1983. *Holt*, at *5. Accordingly, the facts pleaded are insufficient to show a conspiracy.

### 2. *Plaintiff Suffered no Alleged Injury or Damage from the Purported Conspiracy*

Plaintiff has not alleged any injury resulting from the supposed conspiracy. In *Bush*, the Plaintiff alleged that a police officer who was driving an uninsured van and hit the plaintiff's car. The police officer refused to exchange driver information and called a fellow police officer to

intervene. The fellow officer also refused to provide the plaintiff with the offending officer's driver information and falsified the police report in favor of her officer friend. The Plaintiff filed a formal complaint with the police department, and upon investigating, the police department discovered the officers' cover up. Plaintiff sued for conspiracy to violate his due process and equal protection rights by preparing a false accident report, intimidating him and failing to enforce the motor vehicle laws against the offending officer.

The district court dismissed the conspiracy claim holding that conspiracy by police officers to file false reports and otherwise cover up wrongdoing by fellow officers is not in and of itself a constitutional violation. There must be additional constitutional harm to the plaintiff. *Bush* at * 4. The district court found that the plaintiff had not been harmed. He had not been arrested or cited for traffic violations and was not prevented from suing the offending officer for damages. At most the court found that the plaintiff had been inconvenienced and angered (rightfully so). *Id. See also Landrigan, 628 F.2d at 742* ("The fact that plaintiff had to pursue normal legal channels to obtain redress-a jury trial in state court and an appeal-does not state a cognizable injury or damage."); *Townsend v. Holt*, at *5 (plaintiff's ability to bring an action against the offending officers belies his contention that the offending officers conspired to deny him access to the courts); *Holt*, 20 F. Supp. 2d at 843 (without a violation of constitutional rights, a cause of action for conspiracy will not stand).

Here, the Plaintiff was allegedly injured by the conduct of Officer Hough as detailed above. The alleged conspiracy involved vague actions either to persuade Plaintiff not to file any claims or complaints concerning the events, or to cover-up the events that occurred on October 30. Those vague allegations are simply insufficient to demonstrate a conspiracy. But more to the point, Plaintiff has not alleged *any* deprivation of his constitutional rights *as a result of this*

*alleged conspiracy*. If the point was to cover up what had already occurred, Plaintiff's filing of this action demonstrates that the events have not, in fact, been covered up. If the point of the conspiracy was to thwart any legal action that Plaintiff could bring, it did not work. Plaintiff has asserted his claims in this lawsuit based on the conduct he contends they were trying to keep secret. At most, he was pressured or cajoled in an attempt to get him to drop his claims. Defendants Hough, Rippole and Doe were unsuccessful here, too. Without any injury resulting from the conspiracy, Count II must also be dismissed.

### III.  CONCLUSION

Based upon the foregoing, Defendant, Ronald Hough, respectfully requests this Honorable Court to dismiss Counts I and II of the Complaint in their entirety, and for such further relief as the Court deems appropriate.

Respectfully submitted,

SPILMAN THOMAS & BATTLE, PLLC

By: */s/Bryan S. Neft*
   Robert R. Leight, Esquire
   Pa. I.D. No. 33733
   Bryan S. Neft, Esquire
   Pa. I.D. No. 60007

   One Oxford Centre, Suite 3440
   Pittsburgh, PA 15219
   (412) 325-3301

   *Attorneys for Defendant,*
   *Ronald Hough*

*Doc #11053336*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within **Brief In Support Of Motion To Dismiss Counts I and II Of The Amended Complaint Pursuant To F.R.C.P. 12(b)(6)** was served by the CM/ECF system this 27th day of July, 2018, upon counsel of record.

                                      SPILMAN THOMAS & BATTLE, PLLC

By: */s/ Bryan S. Neft*
                Bryan S. Neft, Esquire

*Attorneys for Defendant,*
*Ronald Hough*